UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JUAN E. BURGOS ARIAS and TOWNSEND :
DELI GROCERY CORP.,
                                  :
                 Plaintiffs,          13 Civ. 8542(HBP)
                                  :
     -against-                        OPINION
                                  :   AND ORDER
THE UNITED STATES OF AMERICA and
TOM VILSACK, Secretary of         :
Agriculture,
                                  :
                 Defendants.
                                  :
----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction


          Juan E. Burgos Arias and Townsend Deli Grocery Corpora-

tion ("Townsend Deli") commenced this action, pursuant to 7

U.S.C. § 2023(a)(13)-(15) and 7 C.F.R. § 279.7, challenging

Townsend Deli's permanent disqualification from the Supplemental

Nutrition Assistance Program ("SNAP") by the Food and Nutrition

Service (the "FNS"), a component of the United States Department

of Agriculture (the "USDA").  FNS disqualified Townsend Deli

after it concluded that Townsend Deli had engaged in the traf-

ficking of SNAP benefits as defined by 7 C.F.R. § 271.2.  Among

other things, trafficking includes the exchange of SNAP benefits

for cash.  Plaintiffs claim (1) that they did not know of nor

engage in trafficking of SNAP benefits and (2) that FNS's refusal to impose a civil monetary penalty in lieu of permanent disqualification was an abuse of agency discretion.

All parties have consented to my exercising plenary jurisdiction in this matter pursuant to 18 U.S.C. § 636(c).

By notice of motion, dated April 17, 2014 (Docket Item 13), defendants move for summary judgment dismissing the complaint.  For the reasons set forth below, defendants' motion is granted in all respects.

II.  Facts

Juan E. Burgos Arias is the president and sole officer of the plaintiff corporation, Townsend Deli (Complaint, dated Nov. 29, 2013, (Docket Item 1) ("Compl.") at ¶ 7).  Townsend Deli operates a small grocery store in the Bronx, which opened on January 26, 2010 and obtained SNAP authorization from FNS on March 3, 2010 (Administrative Appeal Record, dated Apr. 17, 2014, ("A.R.") at 1, 4, annexed as Appendices 1-9 to Notice of Certified Administrative Record (Docket Item 16); Cmpl. at ¶ 8).

A.   FNS and SNAP Benefits--
     <u>Trafficking Investigations</u>

Governed by the Food Stamp Act ("FSA"), "SNAP, previ-
ously known as the Food Stamp Program, is a federal benefits
program that enables qualified households or 'beneficiaries' to
purchase food items at participating stores (known as
'firms'[)]." <u>Makey Deli Grocery Inc. v. United States</u>, 873 F.
Supp. 2d 516, 517 (S.D.N.Y. 2012) (Cott, D.J.). <u>See</u> 7 U.S.C.
§§ 2011, 2013(a); 7 C.F.R. § 278.1.  FNS, as part of the USDA,
administers SNAP through which qualifying households receive
benefits via electronic benefit transfer ("EBT") cards, similar
to debit cards (Declaration of Denise Thomas in Support of the
Motion for Summary Judgment, dated Apr. 17, 2014, (Docket Item
17) ("Thomas Decl.") at ¶ 3). <u>See</u> 7 U.S.C. §§ 2013(a), 2016.
Each month the card is credited with food stamp benefits that can
then be used at authorized firms (Thomas Decl. at ¶ 3).  The firm
swipes the card and the SNAP beneficiary enters a personal iden-
tification number ("PIN") (Thomas Decl. at ¶ 3).  The amount of
each purchase is deducted from the SNAP account and is electroni-
cally credited to the firm's bank account (Thomas Decl. at ¶ 3).

FNS maintains a record of the EBT transactions, and a
computerized system reviews each transaction to identify patterns
that suggest potential SNAP benefits trafficking (Thomas Decl. at

¶¶ 3, 6).  Once identified, the suspect transactions are referred to a Program Specialist in the Investigative Analysis Branch ("IAB") of the FNS Retailer Operations Division (Thomas Decl. at ¶¶ 7-8).  The Program Specialist analyzes the firm's suspect transactions by comparing them to the transactions of at least one comparable store within the vicinity of the firm and makes a recommendation to the FNS Section Chief as to whether the firm has engaged in trafficking (Thomas Decl. at ¶¶ 8-9, 11).  If the Section Chief agrees with a Program Specialist's determination that trafficking has or is occurring, FNS issues a letter to the firm charging it with trafficking (the "charge letter") (Thomas Decl. at ¶ 16).  See 7 C.F.R. § 278.6(b).

The firm may respond to the charges and request consideration of a civil monetary penalty ("CMP") in lieu of disqualification.  See 7 C.F.R. § 278.6(b), (i) (process and criteria for imposition of a monetary penalty).  FNS can permanently disqualify a store for a single trafficking violation.  7 U.S.C. § 2021; 7 C.F.R. § 278.6(e)(1).  The FNS IAB reviews the documents and issues the determination.  7 C.F.R. § 278.6(c).  That determination is final unless the firm requests review.  7 C.F.R. § 278.6(n).  An administrative review is conducted pursuant to 7 C.F.R. § 279.1, and the firm may provide further information to support its position pursuant to 7 C.F.R. § 279.4(b).  The firm

4

may then seek judicial review of the final agency decision pursu-
ant to 7 C.F.R. § 279.7.

    B.  Investigation
        of Plaintiffs

        After FNS's computer system identified a significant
number of Townsend Deli's transactions that occurred between
December 2012 and February 2013 as suspicious, it referred the
matter to Program Specialist Minetya A. Juarbe for investigation
(A.R. at 45, 229-30).  On February 21, 2013, Townsend Deli was
visited by an independent contractor retained by FNS who investi-
gated the store and submitted a report to FNS (A.R. at 11-44, 46-
47).  FNS compared Townsend Deli's EBT transactions from the
review period to those of two other small grocery stores located
within a half-mile of Townsend Deli (A.R. at 48, 53-54; Thomas
Decl. at ¶¶ 14-15).  Based on the foregoing, Juarbe recommended
to FNS Section Chief Denise Thomas that FNS charge Townsend Deli
with trafficking (A.R. at 59).

    C.  FNS Charge Letter to
        Plaintiffs (April 30, 2013)

        On April 30, 2013, Thomas sent a charge letter to
Townsend Deli alleging that plaintiffs engaged in trafficking in

violation of 7 C.F.R. § 271.2,[1] exchanging SNAP benefits "for cash or consideration other than eligible food" (Cmpl. at ¶ 9; Letter of Denise Thomas to Luis M. Acosta & Juan E. Burgos Arias, dated Apr. 30, 2013 ("USDA April 30, 2013 Letter"), annexed as Exhibit A to Cmpl.).  She wrote that "[a]nalysis of [Townsend Deli's] records reveal [EBT] transactions that establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for" a firm of Townsend Deli's size (USDA April 30, 2013 Letter). She informed plaintiffs that, under 7 C.F.R. § 278.6(e)(1), the sanction for trafficking is permanent disqualification (USDA April 30, 2013 Letter).

FNS identified four categories of SNAP EBT patterns or irregularities as evidence of trafficking:  (1) "multiple purchase transactions [that] were made too rapidly to be credible," (2) "multiple transactions [that] were made from individual benefit accounts in unusually short time frames," (3) "a series of . . . transactions [that exhausted] the majority or all of individual recipient benefits . . . in unusually short periods of time" and (4) "excessively large purchase transactions [that]

---

[1]While plaintiffs claim they were charged with trafficking pursuant to 7 C.F.R. § 278.6(e)(1), it is clear from the USDA charge letter, dated April 30, 2013, that they were charged with trafficking pursuant to 7 C.F.R. § 271.2, which warranted a sanction of permanent disqualification pursuant to 7 C.F.R. § 278.6(e)(1).

were made from recipient accounts" (USDA April 30, 2013 Letter).
She informed plaintiffs that "FNS may impose a [CMP] of up to
$59,000.00," as calculated under 7 C.F.R. § 278.6(j), "in lieu of
permanent disqualification of [Townsend Deli] for trafficking"
(USDA April 30, 2013 Letter).  However, she also explained that
in order to qualify for the limited sanction of a CMP, plaintiff
had to establish four criteria by adequate documentation within
ten days of plaintiffs' receipt of the letter (USDA April 30,
2013 Letter).  Finally, Thomas also attached lists of the suspi-
cious transactions, broken down into the four categories set
forth above, with some transactions appearing on multiple lists
(A.R. at 63-141; Thomas Decl. at ¶ 17).  The lists contained over
600 transactions totaling more than $90,000 in SNAP benefits
(A.R. at 141).  There is no dispute between the parties that
these transactions actually occurred.

In the four-month period immediately preceding Thomas's
letter, the plaintiffs averaged $37,741.96 per month in SNAP re-
demptions (A.R. at 279).  Following receipt of the charge letter
on May 3, 2013, the plaintiffs' total redemptions in May 2013
were $10,737.76, a seventy-two percent decline in SNAP redemp-
tions (A.R. at 279).

D.   Plaintiffs' Response to the
     Charge Letter (May 13, 2013)

By a letter and supporting documents to FNS dated May
13, 2013, plaintiffs denied all allegations and requested a CMP
be considered in lieu of disqualification (A.R. at 145; Cmpl. at
¶ 10).  Plaintiffs also enclosed (1) a letter introducing the
newly hired Townsend Deli manager, Glenny Burgos, (2) a record of
employees' signatures of receipt and acceptance of the Employee
Handbook, (3) a copy of the handbook and (4) employees' signa-
tures acknowledging "Annual Compliance Training" for 2011, 2012
and 2013 (A.R. at 146-73).  The employee handbook did not, how-
ever, mention SNAP benefits or the limited products for which
SNAP benefits could be exchanged (A.R. at 154-73).

E.   Disqualification
     Determination (June 4, 2013)

On May 24, 2013, upon reviewing the materials submitted
by plaintiffs, Juarbe recommended that Townsend Deli be perma-
nently disqualified (A.R. at 175-78).  She determined that plain-
tiffs failed to train employees properly regarding SNAP benefits
even though FNS provided plaintiffs with training materials upon
plaintiffs' receipt of their license (A.R. at 176).  Moreover,
although Juarbe recognized that Townsend Deli's hiring of Glenny

8

Burgos as store manager evidenced an intent to correct the situation, it did not mitigate the violations that had already occurred (A.R. at 176).  Further, she noted that in 2012, Townsend Deli had previously been fined for violations of the Supplemental Food Program for Women, Infants and Children (WIC) for overcharging and engaging in unauthorized transactions (A.R. at 47).  Finally, she determined that FNS could not consider a CMP because the plaintiffs failed to provide sufficient evidence of an effective compliance program to prevent future violations of SNAP.  For all these reasons, the plaintiffs did not satisfy the four CMP criteria set forth in 7 C.F.R. § 278.6(i) (A.R. at 176-77).

By a June 4, 2013 letter, Thomas informed plaintiffs of FNS's decision to permanently disqualify Townsend Deli from the SNAP program, notwithstanding plaintiffs' May 13, 2013 submission[2] (Cmpl. at ¶ 11; Letter of Denise Thomas to Luis M. Acosta & Juan E. Burgos Arias, dated June 4, 2013, ("USDA June 4, 2013 Letter"), annexed as Exhibit C to Cmpl.).  She concluded that Townsend Deli "failed to submit sufficient evidence to demonstrate that [it] had established and implemented an effective compliance policy and program to prevent violations of" SNAP (USDA June 4, 2013 Letter).

---

[2]Referred to as "reply of May 14, 2013" in the letter.

F.   Administrative Review and Final
     Agency Decision (October 28, 2013)

On June 7, 2013, the plaintiffs appealed, seeking an administrative review, to the Chief of the FNS Administrative Review Branch (Cmpl. at ¶ 12; Letter of Mark Hidalgo to Chief of the FNS Administrative Review Branch, dated June 7, 2013, annexed as Exhibit D to Cmpl.).  Although they had the opportunity to do so, it does not appear that plaintiffs provided any additional information to support their position (Letter of Daniel S. Lay to Mark Hidalgo, dated June 11, 2013, annexed as Exhibit E to Cmpl.).

On October 28, 2013, the Administrative Review Branch issued a final decision affirming the permanent disqualification of Townsend Deli (A.R. at 280).

III.  Analysis

A.   Plaintiffs' Claims
     & Defendants' Motion

Plaintiffs have exhausted their administrative remedies and now seek de novo judicial review of the disqualification decision (Cmpl. at ¶ 15).  Plaintiffs contend "[t]hat the firm ownership was not aware of, did not approve, nor did it 'benefit' from, or was not in any way involved with in the conduct or

approval of trafficking violations" (A.R. at 145).  Plaintiffs deny all allegations of trafficking, arguing that the suspect transactions were repayments for Townsend Deli's extensions of credit to SNAP beneficiaries.  Moreover, plaintiffs claim that FNS abused its discretion in refusing to impose a CMP in lieu of permanent disqualification.

Defendants move for summary judgment, arguing that, in light of the evidence presented, a reasonable fact-finder could only conclude that plaintiffs trafficked SNAP benefits and that plaintiffs have not met their burden of proving FNS's determination erroneous (Memorandum of Law in Support of the Motion by Defendants the United States and Tom Vilsack for Summary Judgment, dated Apr. 17, 2014, (Docket Item 14) ("Defs.' Mem.") at 1-2).  Further, defendants contend that permanent disqualification was warranted under the regulations, because plaintiffs failed to satisfy the four necessary criteria that would justify the limited sanction of a CMP and that FNS did not, therefore, abuse its discretion in imposing the penalty of disqualification (Defs.' Mem. at 2).  Finally, defendants argue that plaintiffs' claim against Secretary Vilsack should be dismissed because it is barred by sovereign immunity (Defs.' Mem. at 7 n.3).

On June 19, 2014, I issued an Order directing plaintiffs to serve and file opposition to the defendants' pending

motion for summary judgment no later than July 31, 2014 (Order, dated June 19, 2014, (Docket Item 19) at 1).  To date, plaintiffs have not submitted anything in opposition to defendants' motion.

      B.   Standards Applicable to a
         <u>Motion for Summary Judgment</u>

      The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party . . . is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  To grant the motion, the court must determine that there is no genuine issue of material fact to be tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine factual issue derives from the "evidence [being] such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505.  The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual argument based on "conjecture or surmise," <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).  The Supreme Court teaches that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); <u>see also</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

It is a settled rule that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Copolla v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Local Rule 56.1(a) requires that a party moving for summary judgment submit a "separate, short and concise statement,

13

in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  A non-moving party's "failure to comply with Local Rule 56.1 is [a sufficient ground] for deeming admitted the facts contained in [the movant's] Rule 56.1 statement" and granting the motion. Taylor v. Local 32E Serv. Employees Int'l, Union, 286 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2003) (Conner, D.J.), aff'd, 118 F. App'x 526 (2d Cir. 2004); Watt v. N.Y. Botanical Garden, 98 Civ. 1095 (BSJ), 2000 WL 193626 at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (Jones, D.J.).  "A district court[, however,] has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "may . . . opt to conduct an assiduous review of the record even" when a party has not com-plied with Rule 56.1.  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).

The Court of Appeals for the Second Circuit has further explained that

> in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion[s].

Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139,

140 (2d Cir. 2003); Holtz v. Rockefeller & Co., supra, 258 F.3d
at 74 ("The local rule does not absolve the party seeking summary
judgment of the burden of showing that it is entitled to judgment
as a matter of law, and a Local Rule 56.1 statement is not itself
a vehicle for making factual assertions that are otherwise unsup-
ported in the record.").  Finally, even when a summary judgment
motion is unopposed, I must examine the record to determine
whether a genuine issue of fact exists for trial; a summary
judgment motion cannot be granted on default.  Jackson v. Fed.
Express, No. 12-1475-CV, 2014 WL 4412333 at *6 (2d Cir. Sept. 9,
2014), accord Vt. Teddy Bear Co. v. 1-800 Beargram Co., supra,
373 F.3d at 244.

Given the strong preference in this Circuit for resolv-
ing cases on the merits, see, e.g., Jamison v. Fischer, 11 Civ.
4697 (RJS), 2012 WL 4767173 at *6 (S.D.N.Y. Sept. 27, 2012)
(Sullivan, D.J.), I shall overlook plaintiffs' failure to submit
a Rule 56.1 statement and review the record independently.  See
Am. Med. Ass'n v. United HealthCare Corp., 00 Civ. 2800 (LMM),
2007 WL 1771498 at *3 (S.D.N.Y. June 18, 2007) (McKenna, D.J.)
(conducting review of the record "to fill . . . gaps" resulting
from plaintiffs' failure to file a 56.1 counter-statement in
response to defendants' 56.1 statement); Citibank, N.A. v. Out-
door Resorts of Am., Inc., 91 Civ. 1407 (MBM), 1992 WL 162926 at

*4 (S.D.N.Y. June 29, 1992) (Mukasey, D.J.) (declining to grant summary judgment based on nonmoving party's failure to submit a Rule 56.1 statement).

    C.   De Novo
         Review Standard

      I have reviewed de novo the determination that plaintiffs engaged in benefits trafficking. See 7 U.S.C. § 2023(a)(15). In conducting a de novo review of the issues arising from the administrative decision, I have examined the entire record to determine whether the administrative decision was supported by the evidence. 7 U.S.C. § 2023(a)(15); Ibrahim v. United States, 834 F.2d 52, 53-54 (2d Cir. 1987), citing J.C.B. Super Markets, Inc. v. United States, 57 F.R.D. 500, 502-03 (W.D.N.Y. 1972), aff'd, 530 F.2d 1119 (2d Cir. 1976). Plaintiffs, as the parties challenging their permanent disqualification from SNAP, bear the burden of proving by a preponderance of the evidence that the agency's action was "invalid." 7 U.S.C. § 2023(a)(16); see Hernandez v. U.S. Dep't of Agric. Food & Consumer Serv., 961 F. Supp. 483, 485 (W.D.N.Y. 1997); see also Fells v. United States, 627 F.3d 1250, 1253 (7th Cir. 2010), citing Kim v. United States, 121 F.3d 1269, 1272 (9th Cir. 1997);

16

Warren v. United States, 932 F.2d 582, 586 (6th Cir. 1991);

Redmond v. United States, 507 F.2d 1007, 1011-12 (5th Cir. 1975).

    D.  Plaintiffs Engaged
       in Trafficking

      To determine whether a trafficking violation has oc-
curred, FNS may consider "facts established through on-site
investigations, inconsistent redemption data, evidence obtained
through a transcript report under an [EBT] system, or the dis-
qualification of a firm from" WIC, along with other relevant
evidence.  7 C.F.R. § 278.6(a).  Defendants' motion rests largely
on the conclusions of Juarbe and Thomas, their comparison of
plaintiffs' EBT transactions to similar retailers and their
experience as trafficking investigators.  However, their conclu-
sion is also supported by photographs, store observations, re-
ports and sufficient data to demonstrate the implausibility of
the plaintiffs' claims and to support FNS's determination that
Townsend Deli trafficked SNAP benefits.

      1.  Transactions "Made Too
         Rapidly to Be Credible"

      First, FNS identified eighty-seven EBT transactions
totaling $15,215.33 that occurred so rapidly that FNS concluded
they could not be bona fide food purchases (A.R. at 63-72).  All

of those transactions occurred between December 2012 and February 2013; an average of twenty-nine such transactions occurred per month.

For example, on December 9, 2012, Townsend Deli redeemed $67.00 in SNAP benefits thirty-five seconds after a transaction for $3.25 (A.R. at 64).  Similarly, on January 5, 2013, it redeemed $70.59 in SNAP benefits fifty-eight seconds after a recorded purchase of $10.83 and then, three minutes and forty seconds later, it recorded a third transaction for $221.40 (A.R. at 67-68).  Other examples include forty-two seconds between redemptions of $15.00 and $199.67 and fifty-two seconds between redemptions of $1.25 and $199.81 (A.R. at 68, 72).

At the time, Townsend Deli had one cash register or check-out station and one point-of-sale device for EBT transactions (A.R. at 11).  Townsend Deli did not have optical scanners for pricing items nor did it provide customers with shopping baskets or carts (A.R. at 11).

I agree that the lack of optical scanners and the need to ring up all purchases renders the eighty-seven rapid EBT transactions implausible.  With only one cash register and one point-of-sale device, it is not credible, for example, that an employee could process a $15.00 purchase, then, forty-two seconds later, manually calculate a purchase totaling $199.67, enter the

18

EBT transaction into the point-of-sale device and have the cus-
tomer swipe his or her card and enter a PIN.  The speed and size
of the identified transactions strongly suggests that Townsend
Deli was exchanging SNAP benefits for cash.

      2.  Multiple Transactions by Individuals
         "in Unusually Short Time Frames"

     Second, FNS identified one hundred sixteen EBT transac-
tions totaling $11,963.54 where multiple transactions by the same
beneficiary occurred in less than twenty-four hours (A.R. at 73-
79).

    For example, one beneficiary allegedly made three redemp-
tions of $79.99, $240.59 and $40.23, for a total of $360.81, in
just under seven hours (A.R. at 76).  Another beneficiary re-
deemed $149.50 and $109.58 ($259.08 total) in three hours and
thirty-seven minutes, while another beneficiary redeemed $289.69
and $142.50 (totaling $432.19) in five hours and one minute (A.R.
at 74, 75).

     Townsend Deli's limited selection of eligible food
items makes it virtually impossible to believe that customers
would return to the store within twenty-four hours to make re-
peated large transactions.  Townsend Deli offers typical grocery
items, including fruits, vegetables, snack foods, breads, eggs,

dairy products and meats, as well as ineligible items, such as tobacco products, alcohol, cleaning supplies and pet food (A.R. at 11-13).  Both photographs and inventory lists of eligible food from Townsend Deli clearly demonstrate that there was nothing special or unique about Townsend Deli which would cause customers to repeatedly visit the store within such short periods of time. It is highly unlikely, for example, that a customer would need to make repeated purchases of $40.00 to $290.00 in less than seven hours at the store.  Rather, it seems most likely that Townsend Deli offered cash, rather than eligible food items, in exchange for SNAP benefits, and that the redemptions were structured into multiple transactions in a clumsy effort to avoid detection.

### 3.   Transactions Which Exhausted Benefits Within a Short Period of Time

Third, FNS identified one hundred sixty EBT transac-tions totaling $25,056.14 which exhausted an individual's account benefits in an unusually short time period (A.R. at 80-94). Multiple beneficiaries withdrew the precise balance of each of their accounts, including, for example, one-time redemptions of $279.99, $270.59, $254.34 and $250.50 (A.R. at 80).  On other occasions, individual beneficiaries would engage in multiple same-day transactions to deplete the account balance.  For exam-

ple, one beneficiary withdrew $100.99 and $99.10 (totaling $200.09) in less than four hours, exhausting the benefit account (A.R. at 82).  Another beneficiary made purchase transactions of $150.45 and $16.53 (totaling $166.98) within two hours and forty-two minutes, emptying the account (A.R. at 90).

Data collected and analyzed by the USDA regarding the rate at which SNAP benefits are redeemed shows that, on average, all SNAP beneficiary households tend to spend 21.2% of benefits by the end of the first day of the month, 60.3% of benefits by the end of the first week and 80.5% of benefits by the end of the second week of the month (Thomas Decl. Ex. A, at A-31).  Even after three weeks have expired, households tend to retain at least nine percent of their benefits (Thomas Decl. Ex. A, at A-31).

At Townsend Deli, however, many beneficiaries redeemed most, if not all, of their benefits within the first week of the month or in a single day.  Again, there is nothing in the record explaining why so many Townsend Deli customers would break from typical spending patterns of SNAP beneficiaries unless they were being offered something that other SNAP beneficiaries were not, such as cash.  With Townsend Deli's limited inventory of eligible food items, it is highly unlikely that a beneficiary would choose to spend most or all of his or her allotted monthly benefits in a

store with limited inventory where, presumably, not all items that were needed or wanted were available.

The highly atypical manner in which Townsend Deli's customers purportedly redeemed their benefits is further evidence of trafficking.

### 4.  Excessively Large Transactions

Fourth, FNS identified six hundred sixty-three EBT transactions totaling $90,805.08 in which individual beneficiaries made "excessively large purchase[s]" (A.R. at 95-141).  For example, one beneficiary made large purchases during the first week of each month, redeeming $281.25 in December, $205.14 in January and $142.12 in February (A.R. at 99).  Another individual redeemed exactly $79.99 each month (A.R. at 99).  A third beneficiary redeemed $201.53, $280.83, $282.89 and $102.50 (totaling $867.75) within the first five days of December (A.R. at 105).

Such large transactions are inconsistent with the food inventory of Townsend Deli.  Townsend Deli does not sell items in bulk, nor does it sell specialty or higher-priced items; it offers only staples such as meats, fruits, vegetables and dairy products (A.R. at 11-13, 53).  Townsend Deli did not maintain sufficient eligible food items in its inventory to justify the

six hundred sixty-three EBT transactions of the magnitude described above.

These transactions are particularly suspect considering that Townsend Deli does not provide shopping carts or baskets for customers and, as is clear from the photographs of the premises in the record, it has limited counter space for customers to place items for purchase.  To warrant redemptions of $100 or more, one would expect the store either to cater to customers purchasing a large volume of items in one visit or to maintain a stock of bulk, high-priced or specialty items.  Townsend Deli does neither.

Furthermore, Townsend Deli's transactions, on average, were much larger than those of two comparator stores identified by FNS -- Pauriany Deli Grocery #1 and AC1 Supermarket & Deli Corp.  Townsend Deli's average redemption was $35.93 -- more than three times that of the comparator stores' averages of $6.57 and $9.06, respectively, and more than double the $13.51 average redemption of all small New York grocery stores (A.R. at 54).

Beneficiaries also commonly made large purchases at Townsend Deli while making more typical-sized purchases at other supermarkets and super stores which appear to have had larger inventories and more competitive pricing (A.R. at 55, 58).  For example, less than five hours after a beneficiary redeemed

$282.57 at Townsend Deli, the same beneficiary redeemed $155.46 at BJ's Wholesale Club 176, a super store (A.R. at 58).  Another beneficiary redeemed $200.25 at Townsend Deli, only to redeem $20.01 at a supermarket a little more than three hours later (A.R. at 56).

In addition to the transactions being unusually large, defendants note that many of the transactions are similar, using patterns of repeated digits and suggesting fabrication.  Two patterns frequently appearing are transactions at or near $200.00 and $280.00 (A.R. at 51-52).  For example, one household redeemed $199.77, $199.75 and $199.83 on the twelfth of December, January and February respectively, while on the same dates, another household redeemed $199.98, $199.79 and $199.81 (A.R. at 109, 129).  One beneficiary redeemed $199.82, $199.89 and $199.82 each month, and still another redeemed $199.89 and $199.58 in December, $199.85 in January and $199.08 in February (A.R. at 113, 132).  Many other beneficiaries appear to repeat this pattern as well (see, e.g., A.R. at 114, 123, 138).  FNS identified eighty-seven transactions which each total approximately $200.00 in benefits (A.R. 243-44).  In another example, a beneficiary redeemed $280.89, $282.89 and $283.89 near the middle of December, January and February, while another beneficiary redeemed $280.89, $280.29 and $280.49 in December, January and February as well

(A.R. at 130, 134).  This pattern was also repeated by other beneficiaries (see, e.g., A.R. at 105, 109).

All the foregoing facts are further evidence that Townsend Deli routinely fabricated transactions as part of an established routine of exchanging certain amounts of SNAP bene-fits for set amounts of cash.

### 5.  Plaintiffs' Explanation is Insufficient

Plaintiffs have offered two explanations for the charg-es against them, neither of which give rise to a genuine issue of material fact.

During the administrative proceedings, plaintiffs claimed that they were unaware of and did not benefit from any trafficking in SNAP benefits.  After this action was commenced, plaintiffs first offered a different defense.  At a pretrial conference before me on February 14, 2014, plaintiffs through their attorney, claimed that the transactions that gave rise to the charges were the product of Townsend Deli's practice of extending credit to its customers.  According to plaintiffs' counsel, Townsend Deli's employees allowed SNAP recipients to purchase items on credit, and Townsend Deli's employees main-tained a record of those transactions.  According to plaintiffs'

counsel, at the beginning of each month, those beneficiaries who received extensions of credit would redeem SNAP benefits to pay down their debt.  Plaintiffs have never submitted anything beyond their attorney's proffer in support of this argument.

Plaintiffs' "innocent owner" explanation fails as a matter of law.  It is well-settled that there is no "innocent owner" defense applicable to any violations of the FSA.  Kassem v. United States, No. 02-CV-0546E(F), 2003 WL 21382906 at *3 (W.D.N.Y. Apr. 15, 2003), citing J.C.B. Super Markets Inc. v. United States, supra, 530 F.2d at 1122 ("The abuse of [the Food Stamp Program] by employees authorized to act by [the firm] suffices to inculpate the corporation.").  See 7 C.F.R. § 278.6(e)(1)(i) (imposing permanent disqualification if "[p]ersonnel of the firm have trafficked").  While FNS may consider evidence of an owner's purported lack of knowledge as one factor in deciding what sanction is appropriate, see 7 U.S.C. § 2021(b)(3)(B), it is not a defense to the violations of the FSA and its regulations.  "Every court that has addressed the issue has so held."  Kim v. United States, supra, 121 F.3d at 1273 (collecting cases).

Plaintiffs' second argument -- that the suspicious transactions were the repayment of advances of credit -- fails as a matter of law for two independent reasons.  First, firms are

prohibited by 7 C.F.R. § 278.2(f) from accepting SNAP benefits as "payment for items sold to a household on credit." <u>See</u>, <u>e.g.</u>, <u>Makey Deli Grocery Inc. v. United States</u>, <u>supra</u>, 873 F. Supp. 2d at 516. Second, apart from counsel's proffer, there is no evidence whatsoever in the record that supports this contention. Unsupported statements of counsel are insufficient to generate a genuine issue of fact.

> Since [plaintiff] properly supported its motion, [defendant] then had the burden of showing that there was a genuine issue of material fact to preclude summary judgment in favor of [plaintiff]. [Defendant], however, failed to submit competent evidence to meet his burden. <u>See</u> Fed.R.Civ.P. 56(e) (adverse party must respond to summary judgment motion by affidavit or other appropriate evidence and failure to do so results in the entry of judgment if it otherwise is appropriate). <u>Accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (Rule 56(e) requires that non-movant with burden of proof on dispositive issue oppose proper summary judgment motion with any of the evidentiary materials -- affidavit, depositions, answers to interrogatories and admissions -- listed in Rule 56(c)); <u>Boruski v. United States</u>, 803 F.2d 1421, 1428 (7th Cir. 1986) (in submitting unverified memorandum plaintiff failed to meet requirement of defeating summary judgment with counter-affidavits or other competent evidentiary material); <u>Brown v. Chaffee</u>, 612 F.2d 497, 504 (10th Cir. 1979) (once movant established <u>prima facie</u> case for summary judgment, opponent must show by "affidavits or otherwise" that there is a genuine issue of fact).
>
> Although [defendant] pointed to certain issues of fact in his memorandum of law and at oral argument, he failed to provide evidentiary support for his contentions. <u>See</u> <u>British Airways Bd. v. Boeing Co.</u>, 585 F.2d 946, 952 (9th Cir. 1978) (legal memoranda and oral argument are not evidence and cannot create issues of

> fact capable of defeating otherwise valid motion for
> summary judgment); Smythe v. American Red Cross Blood
> Servs., 797 F. Supp. 147, 152 (N.D.N.Y. 1992) (same);
> Paulson, Inc. v. Bromar, Inc., 775 F. Supp. 1329, 1332
> (D. Haw. 1991) (same).  Since [defendant] failed to
> offer competent evidence raising a genuine issue of
> material fact sufficient to preclude summary judgment,
> entry of judgment in favor of [plaintiff] was proper.

Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir.

1994); see also Tompkins v. City of New York, 12 Civ. 7771 (VB),

2014 WL 4467814 at *9 (S.D.N.Y. Sept. 10, 2014) (Briccetti, D.J.)

(no issue of fact arose from assertions made solely in defen-

dants' memorandum of law and summary judgment granted); Kingsway

Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP, 03 Civ. 5560

(RMB)(HBP), 2007 WL 473726 at *6 (S.D.N.Y. Feb. 14, 2007)

(Pitman, M.J.) (collecting cases). Because plaintiffs have of-

fered no evidence to support their loan-repayment claim, coun-

sel's bare assertion is insufficient to give rise to a genuine

issue of fact.


        E.   The Permanent
             Disqualification of Townsend
             Deli Was Not an Abuse of Discretion


             1.   Review for
                  Abuse of Discretion


        Pursuant to 7 U.S.C. § 2021(b)(3)(B), FNS has "the

discretion to impose a civil penalty . . . in lieu of disqualifi-

28

cation."  I have reviewed the factual record de novo to determine
whether failure to assert a CMP in lieu of permanent disqualifi-
cation was an abuse of discretion.  Willy's Grocery v. United
States, 656 F.2d 24, 26 (2d Cir. 1981) (citations omitted)
(courts should determine "whether the Secretary's action was
arbitrary or capricious, i.e., whether it was unwarranted in law
or without justification in fact").  "'Whether the imposition of
a penalty by the FNS [is] arbitrary or capricious is a matter of
law appropriately determined on a motion for summary judgment.'"
Lugo v. United States, 08 Civ. 2960 (RJS), 2009 WL 928136 at *3
(S.D.N.Y. Mar. 30, 2009) (Sullivan, D.J.), quoting Yafaie v.
United States, 94 Civ. 7825 (KMW), 1995 WL 422169 at *1 (S.D.N.Y.
July 18, 1995) (Wood, D.J.).  I conclude there was no abuse of
discretion here.

     The "abuse of discretion" or "arbitrary and capricious"
standard requires an agency's decision be given substantial
deference.  Soler v. G. & U., Inc., 833 F.2d 1104, 1107 (2d Cir.
1987).  "An agency's action is arbitrary and capricious if the
agency relies on factors that Congress did not intend it to
consider, fails to consider an important factor, or offers an
explanation for its decision that is contrary to the evidence
before the agency."  Connecticut Dep't of Pub. Util. Control v.
FCC, 78 F.3d 842, 849 (2d Cir. 1996).  Under the arbitrary and

capricious standard, a "'court is not empowered to substitute its judgment for that of the agency.'" <u>Friends of the Ompompanoosuc v. Fed. Energy Regulatory Comm'n</u>, 968 F.2d 1549, 1554 (2d Cir. 1992), <u>quoting</u> <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971).  "If the penalty imposed is in accordance with the settled policy of the FNS, it is not arbitrary or capricious." <u>Yafaie v. United States</u>, <u>supra</u>, 1995 WL 422169 at *1, <u>citing</u> <u>Lawrence v. United States</u>, 693 F.2d 274, 277 (2d Cir. 1982); <u>Ai Hoa Supermarket, Inc. v. United States</u>, 657 F. Supp. 1207, 1209 (S.D.N.Y. 1987) (Leisure, D.J.).

As explained below, FNS's decision not to impose a CMP in lieu of permanent disqualification was not arbitrary and capricious because the agency's action was well within its regulations.

> 2.  Permanent Disqualification
>     <u>Comported with FSA Regulations</u>

The applicable regulations require that, in the absence of documentary evidence of certain facts, which are discussed in more detail below, the FNS must permanently disqualify a firm that has trafficked SNAP benefits.  7 C.F.R. § 278.6(e)(1)(i) ("The FNS regional office <u>shall</u> [d]isqualify a firm permanently if [p]ersonnel of the firm have trafficked as defined in

§ 271.2." (emphasis added)).  In order to avoid disqualification, a firm that has trafficked in SNAP benefits must submit "substantial evidence" establishing each of four criteria:

> Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and
>
> Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm; and
>
> Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and
>
> Criterion 4. Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it is only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm. . . .

7 C.F.R. § 278.6(i); see also 7 U.S.C. § 2021(b)(3)(B) (FNS has "the discretion to impose a civil penalty . . . in lieu of disqualification . . . [if] there is substantial evidence that [the firm] had an effective policy and program in effect to prevent violations of the" FSA.).  In order to comply with the "substantial evidence" requirement, a firm must submit documentary evidence sufficient to establish the foregoing elements.

> The regulations further set out the supporting documentation that the FNS requires and will consider. As to the existence of an effective compliance policy, "FNS shall consider written and dated statements of

31

> firm policy." _Id._ at § 278.6(i)(1).  As to the exis-
> tence of the policy before the violations occurred,
> "policy statements shall be considered only if documen-
> tation is supplied which establishes that the policy
> statements were provided to the violating employee(s)
> prior to the commission of the violation." _Id._  And as
> to the existence of an effective personnel training
> program, "A firm which seeks a civil money penalty in
> lieu of a permanent disqualification shall document its
> training activity by submitting to FNS its dated train-
> ing curricula and records of dates training sessions
> were conducted; a record of dates of employment of firm
> personnel; and contemporaneous documentation of the
> participation of the violating employee(s) in initial
> and any follow-up training held prior to the viola-
> tion(s)." _Id._ at § 278.6(i)(2).

21871 Hempstead Food Corp. v. United States, 14 Civ. 0006 (ILG),

2014 WL 4402069 at *3 (E.D.N.Y. Sept. 4, 2014); see also,

Traficanti v. United States, 227 F.3d 170, 175 (4th Cir. 2000)

("Store owners cannot simply attest to having effective antifraud

programs; rather, they must prove it."); De Jung Yun v. United

States, 63 F. Supp. 2d 578, 582-83 (E.D. Pa. 1999) ("While the

statute and the regulations permit a discretionary monetary

penalty in lieu of permanent disqualification, a plaintiff must

satisfy all four criteria to be eligible for consideration.").

    The imposition of permanent disqualification here

comported with the applicable regulations because plaintiffs did

traffick in SNAP benefits and failed to establish, by "substan-

tial evidence," the four criteria necessary to make them eligible

for a CMP.

First, plaintiffs have failed to offer dated, documentary evidence of a compliance policy.  Although plaintiffs did submit a copy of Townsend Deli's employee handbook, it does not mention SNAP benefits, compliance training or compliance policies.  Plaintiffs also failed to submit any other dated training curricula or other firm policies that "reflect a commitment to ensure that [Townsend Deli] is operated in a manner consistent with" the FSA.  7 C.F.R. § 278.6(i)(1).

Plaintiffs did submit three documents, signed by three employees, entitled "Annual Employee Training of Adherence to Compliance of Permits and Licenses for the Business," dated January 7, 2011, January 6, 2012 and January 4, 2013 (A.R. at 148-50).  Each document states "ALL STAFF trained and given copies of manuals [sic] State Liquor Authority (beer), NYC Consumer Affairs (cigarettes, health, and food), USDA SNAP Program (food stamps)" (A.R. at 148-50).  These documents neither contain policy statements nor set forth the requirements of the SNAP program as set forth in the regulations.  Furthermore, they do not include the statements required by 7 C.F.R. § 278.6(i)(2)(iii).[3]  Moreover, no evidence was presented to show

---

[3]"Training materials shall clearly state that the following acts are prohibited and are in violation of the Food Stamp Act and regulations:  the exchange of food coupons, ATP cards or
                                   (continued...)

that the three employees whose signatures appear on the documents were the only employees of Townsend Deli in 2011, 2012 and 2013. Thus, plaintiffs have failed to establish that all employees were appropriately trained.

Plaintiffs argue that the May 6, 2013 hiring of Glenny Burgos as manager of Townsend Deli and his acknowledgment of having reviewed SNAP guidelines are further evidence of compliance. However, Burgos was only hired after the trafficking violations occurred; therefore, his hiring does not demonstrate the existence of a compliance policy prior to the occurrence of the violations.

Finally, plaintiffs assert that Burgos Arias's lack of knowledge of trafficking is a mitigating factor under the fourth criterion, but they fail to offer any documentation or other evidence to support this assertion. Cf. Corder v. United States, 107 F.3d 595, 597 (8th Cir. 1997) (civil monetary penalty imposed where firm owner submitted statement from employee that he accepted benefits without owner's knowledge or consent and provided

---

[3](...continued)
other program access devices for cash; and, in exchange for coupons, the sale of firearms, ammunition, explosives or controlled substances, as the term is defined in section 802 of title 21, United States Code."  7 C.F.R. § 278.6(i)(2)(iii).

"substantial evidence . . . [of] a comprehensive compliance policy and employee training program").

Plaintiffs have not produced documentation to FNS or myself demonstrating that Townsend Deli had a written compliance policy that was provided to employees prior to the commission of trafficking violations, nor have they raised a genuine issue of material fact as to whether they developed and implemented a compliance training program.  Because plaintiffs have not pro-vided substantial evidence demonstrating compliance with any of the four applicable criteria, the FNS acted within the regula-tions when it permanently disqualified plaintiffs; FNS did not, therefore, abuse its discretion in asserting a penalty of perma-nent disqualification rather than a CMP.

F.  Plaintiffs' Claims Against
Secretary Vilsack Are Barred
Under the Doctrine of Sovereign Immunity

The United States, as a sovereign entity, may only be sued to the extent that it has waived its sovereign immunity. United States v. Navajo Nation, 537 U.S. 488, 502 (2003); United States v. Mitchell, 463 U.S. 206, 212 (1983); United States v. Lee, 106 U.S. 196, 206 (1882).  "It is axiomatic that the United States may not be sued without its consent and that the existence

35

of consent is a prerequisite for jurisdiction."  <u>United States v.</u>
<u>Mitchell</u>, <u>supra</u>, 463 U.S. at 212.

        The United States has not waived the defense of sover-
eign immunity with respect to claims brought against the USDA,
FNS or its officials under the FSA.  The FSA provides for suits
only "against the United States"; therefore, the only proper
defendant in this case is the United States.  7 U.S.C.
§ 2023(a)(13); 7 C.F.R. § 279.7; <u>see</u> <u>Santana v. U.S. Dep't of</u>
<u>Agric.</u>, No. 11-CV-5033 (ENV)(RLM), 2012 WL 2930223 at *2 n.5
(E.D.N.Y. July 18,2012) (dismissing complaint against the USDA
and substituting the United States as defendant); <u>see also</u> <u>Minhas</u>
<u>v. U.S. Dep't of Agric. Food & Nutrition Serv.</u>, No. C13-756
(MJP), 2013 WL 5675116 at *1 (W.D. Wash. Oct. 17, 2013); <u>Ruhee</u>
<u>M., Inc. v. United States</u>, Civ. A. No. H-05-1547, 2006 WL 1291356
at *2 (S.D. Tex. May 5, 2006); <u>Calderon v. U.S. Dep't of Agric.,</u>
<u>Food & Nutrition Serv.</u>, 756 F. Supp. 181, 183-84 (D.N.J. 1990);
<u>Martin's Food & Liquor, Inc. v. U.S. Dep't of Agric.</u>, 702 F.
Supp. 215, 216 (N.D. Ill. 1988) (dismissing suits against USDA
and FNS as improper under the FSA).  The plaintiffs' suit against
Secretary Vilsack must, therefore, be dismissed.

IV.   <u>Conclusion</u>

      Accordingly, for all the foregoing reasons, defendants'
motion for summary judgment is granted, and plaintiffs' claims
are dismissed in their entirety.

Dated:  New York, New York
        September 29, 2014

                                SO ORDERED

                                HENRY PITMAN
                                United States Magistrate Judge

Copies mailed to:

Mark A. Hidalgo, Esq.
233b East 149th Street
Bronx, New York 10451

Caleb M. Deats, Esq.
Assistant United States Attorney
Southern District of New York
Third Floor
86 Chambers Street
New York, New York 10007